UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODNEY JETT,

    Plaintiff,

v.                                        Case No. 23-cv-893-scd

PAIGE VANDENPLAS,

    Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rodney Jett, who is representing himself, is proceeding on an Eighth Amendment claim in connection with allegations that Defendant Paige Vandenplas refused to provide medical care for a breathing issue at the Green Bay Correctional Institution on October 22, 2020. Dkt. Nos. 1 & 11. On July 24, 2024, Defendant filed a motion for summary judgment. Dkt. No. 23. Because no reasonable jury could conclude that Sgt. Vandenplas was deliberately indifferent towards Plaintiff's breathing issue, or that she caused *additional* harm separate from the underlying condition, the Court will grant the motion for summary judgment and dismiss this case.

**PRELIMINARY MATTERS**

The Civil Local Rules require a party opposing a motion for summary judgment to file a response to the proposed facts. Civ. L. R. 56(b)(2)(B)(E.D. Wis.). On July 25, 2024, the Court entered a notice and order reminding Plaintiff of this specific rule. Dkt. No. 34. The Court directed Plaintiff to "respond to each of the proposed findings of fact by agreeing with each fact or explaining why he disagrees with a particular proposed fact." *Id.* at 1. The Court warned Plaintiff that he does not satisfy his obligations "by simply filing a declaration with his version of the facts."

*Id.* Instead, Plaintiff was required to "respond to *each* proposed fact." *Id.* The Court also notified Plaintiff that "if he does not respond to a proposed fact, the Court will assume that [he] does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." *Id.* at 2.

On August 20, 2024, Plaintiff filed "response" materials to Defendant's motion for summary judgment, but he did not respond to Defendant's proposed facts. Dkt. Nos. 25, 35 & 36. He instead filed his own "proposed facts." Dkt. No. 36. While the Court will consider Plaintiff's "proposed facts" if each fact is properly supported by evidence, it will also deem Defendant's proposed facts admitted for purposes of summary judgment because Plaintiff did not oppose them. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil Local Rule 56(b)(4) regardless of a non-movant's affidavit and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With this in mind, the Court will resolve the motion for summary judgment below.

## UNDISPUTED FACTS

Plaintiff is an inmate at the Green Bay Correctional Institution, where Vandenplas was a Correctional Sergeant. Dkt. No. 25, ¶¶1 & 2. On October 22, 2020, Plaintiff was experiencing "difficulties and complications with breathing;" and his two prescription inhalers were not helping. Dkt. No. 1 at 2-3. Plaintiff told Sgt. Vandenplas about his situation, including his diagnosis of chronic asthma, and he requested "emergency" medical attention. *Id.* Sgt. Vandenplas allegedly said she would call the Health Services Unit (HSU) and left his cell. *Id.* Plaintiff states that Sgt. Vandenplas failed to monitor him that day. *Id.* And she never came back with medical staff later in the day. *Id.* Sgt. Vandenplas admits that she does not specifically recall speaking with Plaintiff

on October 22, 2020, but she states that she would have contacted HSU staff if an inmate had reported difficulty breathing. Dkt. No. 25, ¶¶ 83 & 84. She states that she is not a medical professional and would have deferred to whatever medical staff directed her to do that day. *Id*., ¶¶4 & 5.

Five days later, on October 27, 2020, Nurse Derek Henning (not a defendant) saw Plaintiff for a nursing sick call that was initiated by security staff. *Id*., ¶93; *see also* 26-1 at 19. This appointment occurred during the heart of the Covid-19 pandemic, when there was decreased HSU staffing due to the spreading illness, along with an increased demand for appointments and testing by sick inmates housed in close proximity to each other. Dkt. No. 25, ¶¶28 & 29. Sgt. Vandenplas, who is correctional staff, had no control over when HSU scheduled nursing sick calls; and there were routine delays in scheduling medical appointments all around due to strained medical resources at the time. *Id*., ¶¶12, 28, & 29.

During the October 27 nursing sick call, Plaintiff complained about shortness of breath, headaches, body aches, chills, and changes in taste and smell. *Id*., ¶¶ 56 & 57. Plaintiff's symptoms were consistent with a Covid-19 diagnosis he received four days earlier, on October 23, 2020, so Nurse Henning ordered over-the counter medications, rest, increased fluid intake, breathing exercises, and to immediately report any worsening symptoms to HSU. *Id*., ¶¶55 & 58. During the October 27 nursing sick call, Plaintiff did not complain about a breathing issue that started five days prior that he believed had gotten worse or required emergency care that same day. *Id*., ¶94. Toward that end, Plaintiff's progress notes from the appointment indicated that his respirations were unlabored and quiet, he had an oxygen saturation level of 98%, and he was not in acute distress. *Id*., ¶58. Plaintiff also did not contact HSU *after* the October 27 to report worsening symptoms, though he was specifically directed to do so. *See* Dkt. No. 26-1.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must provide evidence from which a reasonable jury could conclude that: (1) he faced an objectively serious medical condition; and (2) Sgt. Vandenplas subjectively knew about the medical condition and disregarded it. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750, 751 (7th Cir. 2011)). Plaintiff "must show more than mere evidence of malpractice." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Arnett*, 658 F.3d

at 759 (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). This is true because "[t]he Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Additionally, in the context of "delayed" medical care, where an inmate receives medical care but argues that it could or should have been provided sooner, Plaintiff must prove "some injury" separate from the underlying medical condition. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020); *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed."). Indeed, a §1983 claim is a "tort damage action," *see Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir. 1983) and "[t]here is no tort…without an injury…," *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). A mere delay in obtaining medical care for a prisoner does not rise to the level of a constitutional violation if the delay was immaterial because it did not result in any harm to the plaintiff. *Lord*, 952 F.3d at 904. Prisoner-plaintiffs asserting such a claim must come forward with some evidence that the delay caused some degree of additional harm. *See Jackson*, 733 F.3d at 790. "[N]on-expert evidence is sufficient as long as it permits the fact-finder to determine whether the delay caused additional harm." *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th 496, 500–01 (7th Cir. 2023) (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011)).

For purposes of summary judgment, the Court will presume that Plaintiff's breathing issue on October 22 was an objectively serious medical condition. But no reasonable jury could conclude that Sgt. Vandenplas was deliberately indifferent towards it or that she caused *additional* harm separate from the underlying condition. As a preliminary matter, Plaintiff's medical records

5

Case 2:23-cv-00893-SCD    Filed 02/11/25    Page 5 of 8    Document 39

confirm that he saw medical staff on October 27, five days after he reported his condition, for an appointment initiated by security staff. Dkt. No. 26-1 at 19. While the medical records do not specifically identify *which* security officer initiated the appointment or when it was initiated, *see id.*, Plaintiff does not identify any other correctional officer that he notified about his circumstances that could have been involved in initiating the October 27 appointment, *see* Dkt. Nos. 1, 35, & 36. And Sgt. Vandenplas states that she would have called HSU for any breathing issue reported to her on October 22. *See* Dkt. No. 25, ¶¶83 & 84. Thus, based on the record, it appears likely that Sgt. Vandenplas did contact HSU on October 22, like she said she would before she left Plaintiff's cell that day. To the extent Plaintiff is unhappy with the amount of time it took to schedule the nursing sick call—five days—Sgt. Vandenplas had no control over HSU scheduling. *See* Dkt. No. 25, ¶12. All Sgt. Vandenplas could do as correctional staff was report the medical emergency to HSU, which it appears she did based on the appointment he received five days later. *See* Dkt. No. 26-1 at 19. The Court notes that this incident occurred during the heart of the Covid-19 pandemic, when medical resources at the institution (and around the world) were strained. Plaintiff acknowledges this fact but maintains that his main grievance is that Sgt. Vandenplas' conduct that day was "medical neglect." Dkt. No. 35 at 1-2. He states that "serious medical needs were neglected by Sgt. Vandenplas." *Id.* But mere negligence does not establish deliberate indifference, *see Arnett*, 658 F.3d at 759, and nothing in the record shows that Sgt. Vandenplas said or did anything to show deliberate indifference that day. Her conduct was (at most) negligence, and Plaintiff appears to agree.

Moreover, even assuming that Sgt. Vandenplas did "ignore" (or forget to relay) his request for medical attention on October 22, Plaintiff also has no verifying medical evidence that it caused any *additional* harm separate from the underlying condition itself. Plaintiff did not mention his

6

breathing issue from October 22 when he finally saw medical staff on October 27. Though he complained about other symptoms, he did not report that his breathing had gotten worse over the last five days due to lack of medical care. Nor did he report any worsening symptoms *after* his medical appointment on October 27, even though he was specifically directed to report any worsening symptoms. Additionally, testing at the October 27 appointment showed that his respirations were unlabored and quiet, he had an oxygen saturation level of 98%, and he was not in acute distress. Based on this record, no reasonable jury could conclude that any "delay" by Sgt. Vandenplas on October 22 caused additional harm separate from the underlying condition itself.

Finally, Plaintiff attaches an Inmate Complaint Examiner (ICE) report which found that Sgt. Vandenplas violated prison policy by failing to note a breathing issue in an "incident report" or the "housing unit logbook." Dkt. No. 36-1 at 4. But even if that is true, a violation of state prison policy does not violate the constitution. *See Tucker v. City of Chi.*, 907 F.3d 487, 494 (7th Cir. 2018). And the Complaint Corrections Examiner (CCE) noted that he was able to "confirm[] the HSU contact" despite Sgt. Vandenplas' failure to properly "log" it and the "documentation breakdown." Dkt. No. 36-1 at 3-4. Because no reasonable jury could conclude that Sgt. Vandenplas was deliberately indifferent towards his breathing issue on October 22, 2020, or that she caused *additional* harm separate from the underlying condition, Sgt. Vandenplas is entitled to summary judgment and the Court will dismiss this case.

7

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 23) is **GRANTED**; and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 11th day of February, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.